## BURCKHALTER *v.* PLANTERS LOAN AND SAVINGS BANK *et al.*

Where a debtor, in order to secure the payment of a debt, executes a deed which contains no clause of defeasance, the legal effect of such an instrument is to pledge to the creditor the title to the property conveyed thereby until such time as the debt be paid, and if before its payment the debtor die, the creditor is authorized, under the act approved December 18th, 1893, to reconvey the premises and cause the same to be levied upon, in order to subject them to the payment of the debt thus secured; and the premises being for that purpose reconveyed, in the distribution of a fund arising from a sale thereof the creditor will not be postponed to the widow of the debtor in whose behalf in the

meantime an execution had issued against the administrator of her deceased husband's estate for a year's support, and this is true even though the property was actually sold under a tax execution against the debtor.

Argued January 22; after which, the death of the plaintiff in error having been suggested of record, ordered, March 8, 1897, that the judgment be entered as of the former date.

Money rule. Before Judge Callaway. Richmond superior court. October term, 1895.

*Salem Dutcher*, for plaintiff in error.

*Leonard Phinizy, J. S. & W. T. Davidson* and *C. H. Cohen*, contra.

ATKINSON, Justice.

It appears from the record, that on September 20th, 1889, J. H. Burckhalter conveyed to the Planters Loan & Savings Bank certain real estate in the city of Augusta, to secure certain indebtedness due from him to it. The consideration of the deed was stated to be $3,000.00, and it recited that it was made to secure any and all indebtedness then or thereafter due to the bank until the deed was delivered back to the grantor or reconveyance made. It did not specify any amount as then or thereafter to become due, did not state that it was made pursuant to section 1969 of the code, nor that any bond to reconvey had been given. On October 10th, 1894, the bank obtained a judgment in the city court of Richmond county, against J. S. Burckhalter, administrator of said J. H. Burckhalter, for the sum of $1,800.00, the amount due upon a promissory note dated January 10th, 1893, and due 90 days after date. This note recited that, the maker being possessed of the legal title and right to make a deposit and pledge thereof as collateral, had deposited with and pledged to the bank as collateral for the payment of this or any other liability which might become due prior to the maturity of the note, or that might be contracted after the date of the note, and until payment in full of this debt was made, deeds to above two lots in the city of Augusta, and

one other, and a bond for titles from one Palmer, with the
right to the bank to call for additional security should the
same decline in value, and on failure to respond on demand,
this obligation should be deemed due and collectible on the
loan, with full power to sell and assign and deliver the whole
or any part thereof, or any substitute therefor, or additions
thereto, at public or private sale, at the option of the bank,
or its assigns, on the non-performance of this promise, or the
non-payment of the liabilities above mentioned, or at any
time thereafter, without advertisement or notice, and, after
deducting all expenses and interest and attorney's fees, to
apply the residue of the proceeds of such sale or sales to
either or all of such liabilities as the bank should deem
proper, returning the overplus to the maker of the note.
The note contained also a waiver of homestead, and cove-
nant against liability of the bank for failure to promptly
realize upon the collateral.    It appears that between the
date of the institution of the suit and the rendition of the
judgment J. H. Burckhalter died; his administrator was
made a party.    On October 10th, 1894, execution issued on
this judgment, and on October 24th, 1894, the bank exe-
cuted a reconveyance of the land in question to the adminis-
trator of Burckhalter, and on October 31st, 1894, had said
land levied upon by the sheriff, but the same was not sold
under the judgment.    On January 3d, 1895, the sheriff of
Richmond county levied a tax fi. fa. for State and county
taxes against the estate of J. H. Burckhalter, for the year
1894, for the sum of $290.79, on the land described in the
deed to the bank.    Under the levy of this tax execution, the
sheriff, on May 7th, 1895, sold said land at public outcry.
It was knocked down to the bank for the sum of $740.00,
and that sum was paid over by the bank to the sheriff, re-
ceiving therefor the sheriff's deed to the property.    On
January 7th, 1895, Mary H. Burckhalter, widow of J. H.
Burckhalter, in the court of ordinary of Richmond county,
obtained a judgment against J. S. Burckhalter, administra-

tor of J. H. Burckhalter, for the sum of $4,000.00 as a year's support, the same having been set apart to her as such by the ordinary. An execution issued upon this judgment was placed in the hands of the sheriff at the time of the tax sale, and the widow claimed the fund of $740.00 to be subject to her year's support. The bank also claimed the $740.00. · The sheriff declined to pay over the money to either party, and being ruled by the widow for the money, filed his answer admitting substantially the facts above recited, and prayed the direction of the court. The court, upon consideration of the issues submitted, rendered a judgment directing the sheriff, out of the proceeds of the sale of the land, to pay off the tax fi. fa. The balance of the fund was awarded to the Planters Loan & Savings Bank. Mary H. Burckhalter, claiming that by virtue of the lien of her judgment as for a year's support her right was superior to the right of the bank, excepted to this judgment; and we are now to consider what were her rights in the premises.

1. Where an allowance is made under our statute authorizing the setting apart of a sum out of the estate of a person deceased, for the benefit of his widow and minor children, the lien of a judgment making such an allowance attaches only to property of which the deceased husband and father died seized and possessed. The statute making provision for the setting apart of this allowance expressly provides that it shall be made from the estate of the deceased, and if before his death the deceased parted with his title to property, it can no longer be considered his estate. Aside from the plain provisions in the statute, it was held in the case of Summerford v. Gilbert, 37 Ga. 59, that where a person during his lifetime had parted with his title to property, the lien of a widow's allowance as for a year's support did not attach. It is insisted, however, in the present case, that the conveyance under which the bank claims a preference over the allowance of the widow was only a mortgage, and did not amount in law to an absolute conveyance

of the title. If this contention were well founded, the widow would have the better right; but we cannot hold that the instrument under consideration in the present case was a mere mortgage. It is true that it expressed upon its face the object of its execution, and that object was declared to be to secure the payment of a certain indebtedness, but though this was the avowed object of the parties, the instrument in its present form is none the less effectual as a conveyance of title. It has been repeatedly held in this court that the title to property may be pledged as security for the payment of a debt; and that there is a plain, manifest distinction between a pledge of the title as security for the payment of a debt, and the creation of a mere lien upon the property for a similar purpose, has been likewise held. See *Pirkle* v. *Equitable Mortgage Co.*, and cases there cited, 99 *Ga.* 524. The effect of the execution of a mortgage is simply to impose a lien upon property, and this can pass no title. The execution of an absolute conveyance is equally effective as a security, and does pass the title. In the one case a simple lien is imposed upon the property to the extent of the owner's interest; in the other no lien is created, but the interest of the owner passes absolutely to the creditor, and remains his property, subject only to redemption upon the payment of the debt. The right vested in a creditor in consequence of the execution of a mortgage is defeasible, and is extinguished by the performance of the condition required of the debtor. In the case of an absolute deed given as security for the payment of a debt, the mere payment of the debt does not reinvest the debtor with the title, but only creates in him a complete equity to have a reconveyance. The legal title vested in the creditor by such a conveyance cannot be defeated by any act of the debtor. It requires the co-operation of debtor and creditor to reinvest the debtor with the legal title. The test then whether an instrument be a deed or mortgage is necessarily whether the interest acquired by the holder of an instrument is such

an interest as can be extinguished by the voluntary act of the debtor alone. If it can be, the instrument is defeasible, and does not pass such an absolute title as would give to the holder a preference over any lien superior in dignity to the lien of an ordinary mortgage; but if the instrument by which the title is conveyed to the creditor be of such a character as to pass into him an absolute title, it can be revested only by a reconveyance to the grantor, or by compliance with the provisions of section 2774 of the Civil Code. Neither the debtor, nor any one claiming through him, has any legal right, but a mere equity of redemption, and in order to charge the property conveyed by such a deed with payment of his debts, the title must be first revested by the payment of the debt to secure which the deed was executed. It will be observed that the instrument relied upon by the bank to entitle it to the money in the hands of the sheriff was an absolute conveyance of the property sold. It was made "to secure any and all indebtedness then or thereafter due or to become due" to the bank until the deed was delivered back to the grantor, or reconveyance made. The contract between the parties was plain and unambiguous. It vested in the grantee the absolute fee "until such time as the deed was delivered back to the grantor, or reconveyance made." Until the performance of one of these acts, the title was to remain in the grantee, and neither the grantor nor his privies in estate had any right to demand either a redelivery or a conveyance to the grantor until payment of the debt to secure which this title was pledged. The debt had never been paid, and the reconveyance by the creditor to enable him to sell the property as the property of the debtor did not vest in the administrator the title, except for that purpose. Under the act approved December 18th, 1893, it was competent for a person holding such a conveyance to reconvey for the purpose of giving effect to the deed as a security; and the act authorizing the reconveyance expressly provides, that the proceeds of such sale

shall belong to the plaintiff in such judgment prior to all liens whatever against the defendant in execution, unless some other creditor or person interested in such proceeds can show, as he is thereby allowed to do, that according to law, the plaintiff is not entitled to a priority in the proceeds, or any legal and just claim therein, and that such creditor, or other person claiming, as aforesaid, is entitled to such proceeds. Acts 1893, p. 117. The lien of the widow's allowance attached only to the equity of redemption, and inasmuch as the property had not been redeemed by her, and at the sale did not bring a sufficient sum to pay the secured debt, there was nothing in the hands of the sheriff to which her lien could attach, and the court did not err in awarding the same to the plaintiff in execution.

*Judgment affirmed. All the Justices concurring.*