**Kim P. BROOKS, Plaintiff,**

v.

**BRANCH BANKING AND TRUST COMPANY and John Does 1–10, Defendants.**

**Civil Action No. 1:15–CV–00186–SCJ.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed May 28, 2015.

James K. Creasy, The Law Offices of James K. Creasy, Atlanta, GA, for Plaintiff.

Nancy H. Baughan, Peter Frank Busscher, Parker, Hudson, Rainer & Dobbs, LLP, Atlanta, GA, for Defendants.

## ORDER

STEVE C. JONES, District Judge.

This matter appears before the Court on Defendant Branch Banking and Trust Company's Motion to Dismiss (Doc. No. [4]) and Plaintiff's Motion to Amend her Complaint and Allow Discovery (Doc. No. [9]). For the following reasons, Defendant's Motion is **GRANTED**, and Plaintiff's motion is **DENIED.**

## I. FACTUAL BACKGROUND

Plaintiff filed her complaint on November 21, 2014, in the State Court of Gwinnett County, Georgia. Doc. No. [1–1], p. 2. Defendant Branch Banking and Trust Company removed the action to the Northern District of Georgia on January 21, 2015. Doc. No. [1]. Defendant then filed a motion to dismiss Plaintiff's complaint on February 5, 2015. Doc. No. [4]. After being granted an extension of time to respond to Defendant's motion, Plaintiff filed her response on March 10, 2015. Doc. No. [8]. Plaintiff filed a motion to amend her complaint and allow discovery six days later, which Defendant opposes. Doc. Nos. [9], [11].

Plaintiff obtained a mortgage loan from Defendant to purchase rental property that is the subject of this action.[1] Doc. No. [1–1], p. 4. When Plaintiff realized she may fall behind on her mortgage payments, she contacted Defendant to negotiate a payment plan or to refinance the property to avoid default. *Id.* at p. 5. Defendant refused to negotiate and insisted on strict compliance with the mortgage agreement. *Id.* After Plaintiff "fell behind on her mortgage payments" she "attempted to enter into a loan modification program" with Defendant. *Id.*

Plaintiff claims Defendant "intentionally obfuscated its loan modification programs and frustrated Plaintiff's attempts to lawfully participate." *Id.* at p. 6. "For example, [Defendant's] proposed loan modification proposals contained numbers and monetary calculations that did not match Plaintiff's accounting, *and more fundamentally,* were internally inconsistent with [Defendant's] own records." *Id.* (emphasis in original). When Plaintiff requested clarification of Defendant's numbers and calculations, Defendant consistently failed to provide it. *Id.* "Further, [Defendant] refused to accept initial payment under a proposed loan modification program because it was working on another (allegedly revised) proposal ... [t]hat turned out being identical to the original proposal." *Id.* Plaintiff also claims that Defendant "accepted numerous payments from Plaintiff but failed to properly credit her for acceptance of those payments[,]" "improperly reported interest payments Plaintiff properly paid to the Internal Revenue Service[,]" and "failed to properly credit [Defendant's] own escrow accounts for monies Plaintiff paid to it." *Id.* at p. 7.

During this time, Plaintiff alleges that Defendant or its agents and contractors "intentionally harassed and interfered with Plaintiff's tenants by: [a]dvising them not to pay rent to Plaintiff because they would be evicted; [i]nvading their privacy by visiting and photographing the property; *and,* [h]arassing them with attempted visits to the Property." *Id.* (emphasis in original). Defendant disclosed "Plaintiff's banking status with her tenants and improperly represented her default (or alleged default) as well as her efforts to keep the mortgage current." *Id.* at p. 8.

In the end, Plaintiff claims Defendant "cancelled a proposed loan modification program because of an alleged lien on the Property that was inaccurate and unlawful ... [i]n spite of the fact that this issue had been clarified and corrected for [Defendant] promptly after it was discovered." *Id.* Defendant declined Plaintiff's final effort to modify her loan because of "insufficient cash flow," but Plaintiff alleges Defendant's own actions discouraged cash flow by causing at least one tenant to abandon the property. *Id.* (internal quotations omitted). In addition to insufficient cash flow, Defendant declined Plaintiff's final loan modification effort because she failed to make two monthly payments in the previous sixty day period. *Id.* at p. 9. Plaintiff alleges, however, that she made these payments and Defendant rejected them. *Id.* Plaintiff made one final effort to resolve these disputes outside of litigation by sending Defendant a "Qualified Written Request" on September 3, 2014, but Defendant failed or refused to respond. *Id.* (internal quotations omitted).

## II. MOTION TO DISMISS THE COMPLAINT

### A. *Legal Standard*

A complaint may be dismissed if the facts as pleaded do not state a claim for

---

1. "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1273 n. 1 (11th Cir.1999).

relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 679–80, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 561–62, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the prior *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) standard which provided that in reviewing the sufficiency of a complaint, the complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In *Iqbal,* the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

In *Twombly,* the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S.Ct. 1955. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and emphasis omitted).

**B. *Analysis***

Plaintiff raises six claims in her complaint which include 1) breach of contract/good faith and fair dealing/promissory estoppel, 2) unjust enrichment, 3) conversion, 4) intentional interference with contract/business relations, 5) intentional infliction of emotional distress, and 6) negligence. Doc. No. [1–1], p. 10–14. She believes she is entitled to litigation expenses because Defendant acted in bad faith, has been stubbornly litigious, and caused her unnecessary trouble and expense. *Id.* at p. 14–15; *see also* O.C.G.A. § 13–6–11 (2012). Because she believes Defendant's actions demonstrate "willful misconduct, wantonness[,] and that entire want of care which raises the presumption of a conscious indifference to the consequences of [its] actions[,]" Plaintiff also seeks punitive damages. Doc. No. [1–1], p. 15; *see also* O.C.G.A. § 51–12–5.1 (2012). Defendant contends, on the other hand, that Plaintiff's complaint must be dismissed because it fails to state a claim for which relief may be granted. Doc. No. [4–1]; *see also* Fed. R.Civ.P. 12(b)(6). The Court will address each of Plaintiff's claims in turn.

**1. *Breach of Contract/Good Faith and Fair Dealing/Promissory Estoppel***

Plaintiff styles her first count as "Breach of Contract/Good Faith and Fair Dealing/Promissory Estoppel." Doc. No. [1–1], p. 10. She alleges "Defendants have breached their promises and contract with Plaintiff as well as their duty of good faith and fair dealing with Plaintiff regarding the proper accounting of her loan, *and,* her attempts to lawfully obtain a loan modification." *Id.* (emphasis in original). She concludes with "Plaintiff has been damaged." *Id.* Defendant contends that Plaintiff does not state a claim for breach of contract because she does not identify a contract, or a specific contractual provision, that Defendant breached. Doc. No. [4–1], p. 5.

Plaintiff fails to state a claim for breach of contract. In Georgia, "[t]he essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Kabir v. Statebridge Co., LLC,* No. 1:11–cv–2747–WSD, 2011 WL 4500050, at *7, 2011 U.S. Dist. LEXIS 109778, at *23 (N.D.Ga. Sept. 27, 2011)

(internal quotations omitted). Defendant is correct that "a plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." *Anderson v. Deutsche Bank Nat'l Trust Co.*, No. 1:11–cv–4091–TWT–ECS, 2012 WL 3756512, at *5, 2012 U.S. Dist. LEXIS 122130, at *14 (N.D.Ga. Aug. 6, 2012) (citing *Am. Casual Dining, L.P. v. Moe's Sw. Grill, LLC*, 426 F.Supp.2d 1356, 1370 (N.D.Ga.2006)); *see also Alexander v. Bank of Am., N.A.*, No. 2:13–CV–00067, 2014 WL 106349, at *3–4, 2014 U.S. Dist. LEXIS 2907, at *23–24 (N.D.Ga. Jan. 10, 2014). Plaintiff relies on *AirWatch LLC v. Mobile Iron, Inc.*, however, in claiming that she sufficiently "described the loan modification, alleged that Defendant accepted payments under the program but failed to apply them to her credit, *and,* [alleged that Defendant] failed to properly account for them in escrow." Doc. No. [8], p. 5 (emphasis in original); *see AirWatch LLC v. Mobile Iron, Inc.*, No. 1:12–cv–3571–JEC, 2013 WL 4757491, 2013 U.S. Dist. LEXIS 125817 (N.D.Ga. Sept. 4, 2013).

Plaintiff alleged that she obtained a mortgage loan from Defendant. Doc. No. [1–1], p. 4. Plaintiff also alleged that Defendant "accepted numerous payments from Plaintiff but failed to properly credit her for acceptance of those payments[,]" Defendant "failed to properly credit its own escrow accounts for monies Plaintiff paid to it[,]" Defendant unilaterally rejected monthly payments Plaintiff made to it, and Defendant made an improper accounting of her loan. *Id.* at p. 7, 9, 10. Throughout her complaint, Plaintiff discusses a *proposed* loan modification program and *attempting* to modify her loan or negotiate a refinance, or payment, plan to avoid default. Yet she admits that Defendant "insisted on strict compliance with the mortgage" and that she "fell behind on her mortgage payments." *Id.* at p. 5. Finally, Plaintiff alleged she incurred damages because Defendant breached the contract. *Id.* at p. 10. But these allegations fail to state a claim for breach of contract because Plaintiff never alleged a contractual provision Defendant breached. Her reliance on *AirWatch* is also misplaced. In that case, the plaintiff referenced "its proposal and [an another agreement incorporated by reference into the proposal] throughout its pleadings and include[d] excerpts from the [secondary agreement] in its complaint." *AirWatch LLC,* 2013 WL 4757491, at *8 n. 10, 2013 U.S. Dist. LEXIS 125817, at *27 n. 10. Here, Plaintiff's complaint fails to show a valid contract or mention a specific contractual provision Defendant breached. The only potential agreement she discusses in any detail is a proposed loan modification program, but she consistently labels such a program as only a proposal. Her negotiations or attempts to enter into a loan modification agreement are not sufficient to allege a valid contract. Additionally, "Plaintiff's conclusory allegation that [s]he 'has been damaged by the breach of contract' is insufficient to survive a motion to dismiss." *Anderson,* 2012 WL 3756512, at *5, 2012 U.S. Dist. LEXIS 122130, at *16. Plaintiff's conclusory allegations that Defendant harmed her and breached a contract fail to state a claim for relief.

■ Plaintiff fails to state a claim for Defendant's breach of the covenant of good faith and fair dealing. "[T]o the extent that Plaintiff attempts to state a claim for breach of the implied covenant of good faith and fair dealing based on Defendants' alleged wrongdoing, that claim fails absent a breach of an express term of the contract." *Alexander,* 2014 WL 106349, at *8, 2014 U.S. Dist. LEXIS 2907, at *24; *see also Morrell v. Wellstar Health Sys., Inc.,* 280 Ga.App. 1, 5, 633 S.E.2d 68, 72 (2006)

("Although each contract ... contain[s] an implied covenant of good faith and fair dealing in the performance of the contract, there is no independent cause of action for violation of the covenant apart from breach of an express term of the contract."). Plaintiff concedes that her covenant of good faith and fair dealing claim "should stand or fall with the breach of contract claim." Doc. No. [8], p. 6. Because Plaintiff fails to state a claim for breach of contract, her claim for breach of the duty of good faith and fair dealing also fails.

■ Plaintiff fails to state a claim for promissory estoppel. The Georgia Code provides, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." O.C.G.A. § 13–3–44(a) (2012). "To prevail on a promissory estoppel claim, a plaintiff must demonstrate that (1) the defendant made certain promises; (2) the defendant should have expected that the plaintiff would rely on such promises; and (3) the plaintiff did in fact rely on such promises to his detriment." *Doll v. Grand Union Co.*, 925 F.2d 1363, 1371 (11th Cir.1991).

■ Defendant is correct that Plaintiff does not allege any promise made to her by Defendant. At most, Plaintiff alleges that she attempted to enter a loan modification program with Defendant, and Defendant refused to allow her to modify the loan. In fact, Defendant "insisted on strict compliance with the mortgage." Doc. No. [1–1], p. 5. Because Plaintiff does not allege any promise made to her by

Defendant, her promissory estoppel claim must fail. *See Watts v. JPMorgan Chase Bank*, No. 1:13–CV–00866, 2013 WL 3779152, at *3, 2013 U.S. Dist. LEXIS 100136, at *10 (N.D.Ga. July 17, 2013) ("On its face, [Plaintiff's complaint] does not allege a promise by [Defendant] to do anything, and thus does not satisfy the first element of promissory estoppel under Georgia law."). Moreover, Plaintiff does not allege any facts that indicate that Defendant should have expected that she would rely on a promise or that Plaintiff actually relied on any promise to her detriment. Plaintiff also failed to oppose Defendant's argument against the promissory estoppel claim in her response brief, so the Court deems this claim abandoned. *Hudson v. Norfolk S. Ry. Co.*, 209 F.Supp.2d 1301, 1324 (N.D.Ga.2001) (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995)) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."). Thus, Plaintiff fails to state a claim for promissory estoppel.

### 2. Unjust Enrichment

■ Plaintiff's second count is for unjust enrichment. She alleges, "[t]hrough deceitful means and artful practice, Defendants have obtained Plaintiff's monies and have used same for profit.... Defendants have been unjustly enriched." Doc. No. [1–1], p. 11. Defendant contends that this claim must be dismissed because Plaintiff's allegations are conclusory and because Plaintiff has a contract with Defendant regarding the subject matter of this suit.[2]

---

2. Although Plaintiff failed to adequately allege a valid contract or a breach of a specific contractual provision, she did allege that she obtained a mortgage loan from Defendant to purchase certain property. Doc. No. [1–1], p.

4. Defendant attached the note and security deed for this property and mortgage loan signed by Plaintiff as exhibits to its motion to dismiss. Doc. Nos. [4–2], [4–3]. "[A] document central to the complaint that the defense

Doc. No. [4–1], p. 8–9. Plaintiff responded to Defendant's argument only with "[t]he Complaint clearly alleges the Defendant accepted Plaintiff's payments under the loan modification program but failed to properly credit her for them." Doc. No. [8], p. 7.

 In Georgia, "[t]he theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Schutz Container Sys., Inc. v. Mauser Corp.*, No. 1:09–CV–3609–RWS, 2012 WL 1073153, at *35 (N.D.Ga. Mar. 28, 2012) (quoting *Smith Serv. Oil v. Parker*, 250 Ga.App. 270, 271, 549 S.E.2d 485, 487 (2001)) (internal quotations omitted). "To prevail on a claim for unjust enrichment, a plaintiff thus must ultimately prove (1) that it conferred a benefit on the defendant and (2) that equity requires the defendant to compensate for that benefit." *Id.*

 Plaintiff fails to state a claim for unjust enrichment. In her complaint, she alleges, in relevant part, that Defendant "accepted numerous payments from Plaintiff but failed to properly credit her for acceptance of those payments[,]" and Defendant "failed to properly credit its own escrow accounts for monies Plaintiff paid to it." Doc. No. [1–1], p. 7. These blanket statements, that Defendant did not *properly* credit her or its own accounts, are conclusory and need not be accepted by the Court as true. While Plaintiff argues in her response brief that Defendant accepted payments under a loan modification program, her complaint never clearly alleges that an actual loan modification agreement or program even existed. The closest Plaintiff comes to such an allegation is that Defendant "cancelled a *proposed* loan modification program because of an alleged lien on the Property." *Id.* at p. 8 (emphasis added). In light of the note and security deed attached as exhibits to Defendant's motion to dismiss, Plaintiff also never alleges how any money she paid to Defendant conferred a benefit to Defendant that requires her to be compensated. At best, Plaintiff alleges that she fell behind on her mortgage payments, Defendant insisted strict compliance with the mortgage, and Plaintiff was unable to secure any modification of her loan. Finally, because Plaintiff clearly has a valid contract related to her mortgage loan—the subject of this dispute—she cannot allege unjust enrichment under Georgia law. Thus, Plaintiff's claim for unjust enrichment fails as a matter of law.

### 3. Conversion

In her third count, Plaintiff claims Defendant committed conversion. She states, "Defendants are in possession of Plaintiff's personal property (money) and have failed to appropriately account for same.... Defendants have converted Plaintiff's property to their own use and [are] liable to her for money damages." Doc. No. [1–1], p. 11. Defendant contends that Plaintiff's allegations are conclusory, she fails to allege the primary elements of her claim, and a conversion claim generally

---

appends to its motion to dismiss is ... properly considered, provided that its contents are not in dispute." *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997)). Plaintiff did not dispute these documents in her response to Defendant's motion to dismiss. Instead, Plaintiff used the documents to support her response to Defendant's motion to dismiss and as support for her motion to amend her complaint. Doc. Nos. [8], p. 8; [9], p. 2–3. Thus, the Court will consider these documents in ruling on Defendant's motion to dismiss because they are central to Plaintiff's complaint and are not in dispute.

cannot lie for money. Doc. No. [4–1], p. 9–11. Plaintiff responds by arguing that "the specific, identifiable funds are mortgage payments that should have been applied to Plaintiff's interest bearing mortgage account, her tax escrow account[,] and her insurance escrow account. Instead, Plaintiff alleges they were accepted by Defendant but never credited to her benefit." Doc. No. [8], p. 7.

■■■■ "To make out a prima facie case, in an action for damages for conversion of personal property, the plaintiff must show title to the property, possession by the defendant, demand for possession, and refusal to surrender the property." *Taylor v. Powertel, Inc.*, 250 Ga.App. 356, 358, 551 S.E.2d 765, 769 (2001) (internal quotations omitted). "Any distinct act of dominion and control wrongfully asserted over another's personal property, in denial of his right or inconsistent with his right, is a conversion of such property." *Id.* "However, when someone comes into lawful possession of personal property, in the absence of a demand for its return and a refusal to return the personal property, there is no conversion." *Id.* "Tangible personalty or specific intangible property may be the subject for an action for conversion, but as fungible intangible personal property, money, generally, is not subject to a civil action for trover with an election for damages for its conversion." *Id.* at 358–59, 551 S.E.2d at 769. The Georgia Court of Appeals in *Taylor* explains further,

> While money constitutes personal property, money is intangible personalty that is fungible, because it belongs to a class of property which cannot be differentiated by specific identification unless there has been created a specific fund that has been set aside from other money. Thus, there can be no conversion action for money damages for money, because gen-

erally, money is not subject to a civil action for conversion. . . . There exists an exception for the conversion of money; such money must comprise a specific, separate, identifiable fund to support an action for conversion.

*Id.* at 359, 551 S.E.2d at 769. "Examples of specific funds or money that may be the subject of a conversion claim include: insurance premiums earmarked for remittance to the insured, certain bills or coins to which plaintiff had title, a particular class of bills, . . . or a specific check or negotiable instrument." *Pullar v. Gen. MD Grp.*, No. 1:12–CV–4063–TWT, 2013 WL 5284684, at *7, 2013 U.S. Dist. LEXIS 133024, at *21–22 (N.D.Ga. Sept. 17, 2013) (internal quotations omitted).

■■ Plaintiff fails to state a claim for conversion. Plaintiff's factual allegations related to her conversion claim are the same as those already discussed for her unjust enrichment claim. She states that Defendant "accepted numerous payments from Plaintiff but failed to properly credit her for acceptance of those payments[,]" and Defendant "failed to properly credit its own escrow accounts for monies Plaintiff paid to it." Doc. No. [1–1], p. 7. These conclusory statements need not be accepted as true. Although she reiterates these allegations in her response to Defendant's motion to dismiss, she does not identify a specific, separate, identifiable fund to support an action for conversion of money. Her blanket allegations that she made "payments" or paid "monies" to Defendant are insufficient to fall within an exception to the general rule that a conversion action may not lie for money. Simply stating in her response brief that the specific, identifiable accounts are her mortgage account, tax escrow account, and insurance escrow account, and that Defendant failed to properly credit these accounts, is not enough to convert the "payments" or "monies" she

mentions in her complaint into a specific, separate, identifiable fund. She fails to even specify a sum of money she paid to Defendant. In addition, Plaintiff does not allege that Defendant wrongfully asserted dominion or control over her money; she only alleges it failed to properly credit its accounts. More troubling, Plaintiff never alleges she demanded the return of her money and that Defendant refused, both of which are essential elements of her claim. Plaintiff's claim for conversion is, therefore, dismissed.

### 4. Intentional Interference with Contract/Business Relations

Plaintiff's fourth claim is for intentional interference with contract/business relations. She alleges, "Defendants have intentionally interfered with Plaintiff's contractual and business relationships with tenants of the Property which forms the subject matter of this litigation.... Plaintiff has been injured as a proximate result of Defendant's actions and is entitled to recover money damages from them." Doc. No. [1–1], p. 12. Defendant argues that Plaintiff failed to plead a prima facie case and, because Defendant is not a stranger to the business relationship between Plaintiff and her tenants, her claim fails as a matter of law. Doc. No. [4–1], p. 11–12. Plaintiff responds that she did allege the essential elements of her claim, and she points to the security deed to support her argument that Defendant did, in fact, interfere with the contract. Doc. No. [8], p. 8.

■ To state a claim for interference with business or contractual relations, a plaintiff must allege that the defendant " '(1) acted improperly and without privilege; (2) purposely and with malice with the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with the plain-

tiff; and (4) for which the plaintiff suffered some financial injury.' " *HLD Enters., Inc. v. Michelin N. Am., Inc.*, No. 1:03 CV 2558 T, 2004 WL 2095739, at *3 (N.D.Ga. June 29, 2004) (quoting *St. Mary's Hosp. of Athens, Inc. v. Radiology Prof'l Corp.*, 205 Ga.App. 121, 124, 421 S.E.2d 731, 734 (1992)). But "in order to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to the underpinning contract.... In other words, all part[ies] to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships." *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 609, 503 S.E.2d 278, 282–83 (1998). Another court put it this way,

> Where appropriate circumstances appear from the evidence that a defendant had a legitimate interest in either the contract or a party to the contract, the defendant is not a stranger to the contract, although the defendant is a nonsigner of a particular contract[, it is not] a stranger to the contract itself or to the business relationship giving rise thereto and underpinning [the contract].

*Disaster Servs., Inc. v. ERC P'ship*, 228 Ga.App. 739, 741, 492 S.E.2d 526, 529 (1997) (internal quotations omitted); *see also Lake Tightsqueeze, Inc. v. Chrysler First Fin. Servs. Corp.*, 210 Ga.App. 178, 181, 435 S.E.2d 486, 489 (1993).

■ Plaintiff fails to state a claim for intentional interference with contractual or business relations. The factual allegations underpinning this claim include,

> [Defendant] and/or its agents and contractors intentionally harassed and interfered with Plaintiff's tenants by: [a]dvising them not to pay rent to Plaintiff because they would be evicted; [i]nvading their privacy by visiting and photographing the property; *and,* [h]a-

rassing them with attempted visits to the Property.... Further, [Defendant] improperly disclosed Plaintiff's banking status with her tenants and improperly represented her default (or alleged default) as well as her efforts to keep her mortgage current.... [Defendant's] own actions discouraged cash flow for the Property by causing at least one tenant to abandon the Property and break the lease agreement with Plaintiff.

Doc. No. [1–1], p. 7–8. While these allegations are slightly more detailed than most of Plaintiff's complaint, she fails to allege that Defendant conducted any of these actions improperly and without privilege. Additionally, she fails to allege that Defendant acted with malice and intent to injure. Consistent with Plaintiff's other allegations, it is plausible that Defendant sought only to protect its business interest in the loan it provided to Plaintiff to finance the property she used as a source of rental income. Indeed, Plaintiff admits she "fell behind on her mortgage payments." Doc. No. [1–1], p. 5. She also admits that she failed to obtain any modification of her loan agreement. Her complaint is, therefore, devoid of factual enhancement for two of the primary elements of her tortious interference claim.

■ Likewise, Defendant is not a stranger to Plaintiff's contracts or the business relationship she has with her tenants. The family rider to the security deed, which Plaintiff cites in support of her claim in her opposition brief, states,

*Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.* Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's Agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. *This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.*

. . . .

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs.... This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

Doc. No. [1–2], p. 13–14 (emphasis added). These provisions of the security deed clearly demonstrate that Defendant is not a stranger to the business relationship between Plaintiff and her tenants even though Defendant may not have physically signed any lease agreement Plaintiff executed with such tenants. Plaintiff absolutely and unconditionally assigned the rents and revenues of the property to Defendant until her loan was paid in full. Again, she admits the loan was not paid in full because she fell behind in her payments. Doc. No. [1–1], p. 5. Therefore, her argument that because Defendant never claimed in its filings that it provided notice of default to her or the tenants prevented an assignment of the rents and revenues from the property is factually incorrect based on the very document she cites. Plaintiff's argument that Defendant, or its agents, could not enter onto the

property is meritless because she granted them the privilege to do so at any time when a default occurs. Regardless of any potentially improper · actions Defendant may have. taken, Plaintiff's tortious interference claim cannot survive a motion to dismiss because Defendant is not a stranger to Plaintiff's contractual or business relationships with her tenants. For all of these reasons, Plaintiff's intentional interference with contractual or business relations claim is dismissed.

### 5. *Intentional Infliction of Emotional Distress*

Plaintiff claims Defendant is liable for intentional infliction of emotional distress. Her complaint states, "Defendants' actions have been so insulting as to naturally humiliate and embarrass Plaintiff and cause her emotional distress regarding the business status of her rental property and her retirement portfolio." Doc. No. [1–1], p. 13. She continues, "Defendants have willfully and/or wantonly caused Plaintiff emotional upset.... Plaintiff has been damaged." *Id.* Defendant contends that she failed to plead a prima facie case. Doc. No. [4–1], p. 13–14. In response, Plaintiff only states that she did provide an adequate factual basis for her claim. Doc. No. [8], p. 8.

■ A claim for intentional infliction of emotional distress requires four elements. *Ellison v. Burger King Corp.,* 294 Ga.App. 814, 817, 670 S.E.2d 469, 473 (2008). Plaintiff must show that "(1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe." *Id.* (internal quotations omitted). "With respect to the severity of the emotional distress, [t]he conduct must inflict emotional distress so

severe that no reasonable person could be expected to endure it." *Id.* (internal quotations omitted).

■ Plaintiff fails to state a claim for intentional infliction of emotional distress. For this claim, she appears to rely on the same facts as she does for her intentional interference claim. *See* Doc. No. [8], p. 8. As discussed, Plaintiff does not allege any wrongful conduct by Defendant that would support a claim for intentional infliction of emotional distress. Although she fails to allege a prima facie case, no facts contained in the complaint amount to extreme and outrageous conduct. The facts Plaintiff alleges regarding Defendant's actions to protect its loan certainly are not extreme or outrageous, particularly when some of these actions, if not all of them, were authorized under the security deed. Plaintiff's conclusory allegations that she was naturally humiliated and embarrassed, that she was emotionally upset, and that she was damaged are insufficient to demonstrate the requisite severity for this claim. In short, Plaintiff "does not make any effort to show how the four elements necessary to establish such a claim under Georgia law have been met ... Without pleading the necessary facts, [her] intentional infliction of emotional distress claim must fail." *Perdum v. Wells Fargo Bank, N.A.,* No. 1:13–cv–01889–SCJ, 2014 U.S. Dist. LEXIS 179620, at *8 (N.D.Ga. Feb. 6, 2014).

### 6. *Negligence*

■ Plaintiff's sixth claim is for negligence. She claims Defendant "[f]ailed to fully inform Plaintiff of the nature of its alleged loan modification program; [f]ailed to properly report interest Plaintiff paid to the Internal Revenue Service; [f]ailed to properly account for Plaintiff's monies in escrow; *and,* [i]mproperly relied on an unlawful lien when making adverse deci-

sions regarding the Property." Doc. No. [1–1], p. 13–14 (emphasis in original). She also alleges, "Defendants' failure constitutes a breach of duty and negligence under Georgia law.... Plaintiff has been injured as a proximate result of Defendants' actions and is entitled to recover money damages from them." *Id.* at p. 14. Defendant contends that Plaintiff failed to plead a prima facie case. Doc. No. [4–1], p. 14–16. Specifically, Defendant argues that Plaintiff did not identify a duty Defendant owed to her, did not provide facts regarding how Defendant breached a duty owed to her, and she did not sufficiently allege causation or damages. *Id.* Plaintiff responds that she did allege a prima facie case. Doc. No. [8], p. 9. She claims she alleged that Defendant "failed to do four (4) specific things ... [and then] alleged that these failures constituted a breach of duty and negligence under Georgia law.... Plaintiff alleged that she has been injured as a proximate result of Defendant's actions." *Id.*

▉ Plaintiff fails to state a claim for negligence. For her negligence claim, Plaintiff "must show a duty, breach of that duty, causation, and damages." *John Crane, Inc. v. Jones,* 278 Ga. 747, 751, 604 S.E.2d 822, 825 (2004). It is true that Plaintiff alleges Defendant failed to do four specific things, but she does not allege any specific duty owed to her by Defendant. She only states that Defendant's "failure constitutes a breach of duty and negligence under Georgia law." Doc. No. [1–1], p. 14. This allegation is purely conclusory and is insufficient to demonstrate Defendant owed Plaintiff a duty. Because Plaintiff does not identify a duty Defendant owed to her, she also fails to identify how Defendant breached that duty. *See Sellers v. Bank of Am., N.A.,* No. 1:11–CV–3955–RWS, 2012 WL 1853005, at *5–6, 2012 U.S. Dist. LEXIS 70343, at *14–15

(N.D.Ga. May 21, 2012). Plaintiff likewise fails to plead causation or damages. Merely stating she has been damaged, without alleging any causal connection between the four failures she concludes Defendant committed and her damages, is inadequate to demonstrate the final two elements of Plaintiff's negligence claim. Finally, to the extent Plaintiff argues that Defendant negligently performed the contract between the parties, this argument is without merit. *See S & A Indus., Inc. v. Bank Atlanta,* 247 Ga.App. 377, 381, 543 S.E.2d 743, 748 (2000) ("A defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law.") (internal quotations omitted). Plaintiff's negligence claim is dismissed.

### 7. Litigation Expenses and Punitive Damages

Plaintiff concedes that her claims for litigation expenses and punitive damages are derivative of her other claims. Doc. No. [8], p. 10. Because the Court dismisses Plaintiff's complaint in its entirety, any claims for litigation expenses or punitive damages also fail. *See Freeman v. Wheeler,* 277 Ga.App. 753, 757, 627 S.E.2d 86, 90 (2006); *Benefit Support, Inc. v. Hall Cnty.,* 281 Ga.App. 825, 833, 637 S.E.2d 763, 771 (2006).

### III. MOTION TO AMEND THE COMPLAINT AND ALLOW DISCOVERY

Even though the Court finds that Plaintiff's original complaint (Doc. No. [1–1]) fails to state a claim for which relief may be granted, Plaintiff moved to amend her complaint and to allow discovery on March

16, 2015. Doc. No. [9]. Plaintiff did not attach a proposed amended complaint to her motion, and no proposed amended complaint currently exists on the docket.

Through Plaintiff's motion, she first responds to Defendant's contention that her original complaint must be dismissed because the particular contact at issue, and any particular provision of the contract, were not specified in the complaint. *Id.* at p. 2; Doc. No. [4–1], p. 5. Plaintiff notes that "Defendant's Memorandum appends the Note underlying the debt which forms the subject matter of this litigation as well as the Security Deed and Family Rider." Doc. No. [9], p. 2. She claims that the Note "includes provisions that payments are to be properly applied, first to interest, and then to principal[,]" and that "[t]hese provisions are the very same provisions implicated by Plaintiff's Complaint that monies were accepted by Defendant but not properly applied or allocated." *Id.* Plaintiff continues with "[t]he Family Rider includes provisions that specify when Defendant is permitted to contact Plaintiff's tenants, *and*, defines the terms of such contact, as well as the assignment of rent." *Id.* at p. 3 (emphasis in original). According to Plaintiff, "[t]hese provisions are the very same provisions implicated by Plaintiff's allegations that Defendant and/or its agents or contractors intentionally harassed and interfered [with] her tenants by telling them not to pay rent because they'd be evicted." *Id.* Plaintiff finally names several individuals she contends were involved in the alleged harassment of and interference with her tenants, and she claims these individuals are independent contractors or employees of an entity known as "Black Knight." *Id.* at p. 3–4 (internal quotations omitted).

Federal Rule of Civil Procedure 15(a)(1) provides that a party may amend its pleading once as a matter of course within either twenty-one days after serving it, or twenty-one days after service of a required responsive pleading or motion filed under Rule 12(b), (e), or (f), whichever is earlier. Fed.R.Civ.P. 15(a)(1). After this twenty-one-day period has passed, a party may amend its pleading only with the opposing parties' written consent or the Court's leave, which the Court "should freely give . . . when justice so requires." Fed. R.Civ.P. 15(a)(2). In the case at bar, twenty-one days have passed since service of the original complaint and Defendant's filing of a motion under Federal Rule of Civil Procedure 12(b). In addition, Defendant does not consent to the instant request for leave to amend. Thus, amendment may only be granted by the Court's leave.

The Eleventh Circuit recently stated:

The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Nevertheless, a motion for leave to amend may appropriately be denied "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir.2001).

*In re Engle Cases*, 767 F.3d 1082, 1108–09 (11th Cir.2014). "A claim is futile if it cannot withstand a motion to dismiss." *Alexander v. Bank of Am., N.A.*, No. 2:13–CV–00067–RWS, 2014 WL 106349, at *6, 2014 U.S. Dist. LEXIS 2907, at *18 (N.D.Ga. Jan. 10, 2014) (citing *Fla. Power*

& *Light Co. v. Allis Chalmers Corp.,* 85 F.3d 1514, 1520 (11th Cir.1996)). "That is, leave to amend will be denied 'if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim.'" *Id.* at *6, 2014 U.S. Dist. LEXIS 2907 at *18–19 (quoting *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1255 (11th Cir.2008)).

 Plaintiff's motion to amend is futile. Plaintiff did not attach a proposed amended complaint to her motion, and she only offers argument on two of her original claims—breach of contract and intentional interference with contractual or business relations. Doc. No. [9], p. 2–3. Specifically, Plaintiff uses the security deed and family rider that Defendant attached as an exhibit to its motion to dismiss as support for these two claims. *Id.* Because these documents are central to Plaintiff's original complaint, the Court already considered them in ruling on Defendant's motion to dismiss. Plaintiff provides nothing new in her motion to amend that adds to or in any way substantiates the claims the Court dismissed under her original complaint. She merely points to the security deed and family rider as providing grounds for two of her claims. She fails to even mention her other claims. On the basis of Plaintiff's motion, the Court finds that any amended complaint Plaintiff would file is futile, and her motion to amend is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. [4]) is **GRANTED,** and Plaintiff's Motion to Amend the Complaint and Allow Discovery (Doc. No. [9]) is **DENIED.**